Kirk D. Dillman (SBN 110486)
MCKOOL SMITH HENNIGAN, P.C.
300 South Grand Avenue, Suite 2900
Los Angeles, California 90071
Telephone: (213) 694-1200
Facsimile: (213) 694-1234
kdillman@mckoolsmithhennigan.com

Brett C. Cooper*
Eliza Beeney*
MCKOOL SMITH, P.C.
One Manhattan West
395 Ninth Avenue, 50th Floor
New York, New York  10001
Telephone: (212) 402-9400
Facsimile: (212) 402-9444
bcooper@mckoolsmith.com
ebeeney@mckoolsmith.com

*Pro hac vice application forthcoming

Attorneys for Plaintiff Sprout Therapy

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| **SPROUT THERAPY,**<br><br>             **Plaintiff,**<br><br>      v.<br><br>**KIN HEALTH, INC. d/b/a SONGBIRD THERAPY a/k/a SONGBIRD CARE, and BENJAMIN HSU,**<br><br>             **Defendants.** | **Case No.**<br><br>COMPLAINT<br><br>DEMAND FOR JURY TRIAL |

**NATURE OF ACTION**

1.    Since early 2019, entrepreneur Yury Yakubchyk has been working tirelessly to establish Sprout Therapy, a technology-based in-home provider of applied behavior analysis ("ABA") therapy for children with autism.

2.    Having himself experienced mental health challenges as a child, Yakubchyk was all-too-familiar with the broken care models for children with autism and other developmental disorders. And, as a tech-forward entrepreneur, Yakubchyk was uniquely positioned to build a care platform that would create highly personalized and effective evaluation and treatment for children struggling with developmental challenges.

3.    Beginning in October 2019, Yakubchyk built Sprout Therapy from the ground up. He has since raised and invested millions of dollars, built a team of hundreds of employees, and, through Sprout Therapy, provided autism care to over 100 families across the country.

4.    In or about August of 2020, Sprout Therapy came to learn that a competitor, Defendant Songbird Care a/k/a Songbird Therapy ("Songbird"), had copied its digital footprint, including by verbatim copying several words and phrases on Sprout Therapy's website, reproducing the overall look and feel of the website, and changing its name from Songbird Care to Songbird Therapy to more closely resemble Sprout Therapy's name.

5.    Unlike Yakubchyk, Songbird's founder, Defendant Benjamin Hsu, chose not to invest money and time in developing his own ideas. Instead, Mr. Hsu decided to exploit Yakubchyk's efforts, including branding, marketing, and advertising, and pass them off as his own.

6.    Defendants have not only copied Sprout Therapy's website, but have also launched a Facebook advertisement with the exact same text, image, layout, background, and color scheme as a pre-existing Sprout Therapy Facebook advertisement. Although when reproducing the text, images, and layout of Sprout Therapy's website, Defendants made certain inconsequential changes to Sprout Therapy's content, by, for example, changing the faint image of a sprout behind certain images to a faint image of a bird, they did not do so when reproducing Sprout Therapy's Facebook advertisement. The Songbird Facebook advertisement therefore contains a faint image of a sprout in the background of Songbird's advertisement—dispositive proof of intentional copying.

7.     Songbird has also changed its name to more closely resemble Sprout Therapy's name. As evidenced by its website address www.songbirdcare.com, Songbird originally used the name "Songbird Care."  However, to induce further consumer confusion and further capitalize on Sprout Therapy's brand and goodwill, Defendants recently began marketing Songbird as "Songbird Therapy."

8.     Perhaps worse than their intentional and unauthorized copying of Sprout Therapy's digital footprint is Defendants' recent insistence that, because the Songbird website is different than the Sprout Therapy website in some respects and because Songbird has made certain small changes to its website, Defendants should not be held responsible for any wrongdoing.  But these differences and small changes do not ameliorate the consumer confusion or diversion of Sprout Therapy's business that Songbird has caused, and will continue to cause, by copying Sprout Therapy.

9.     By this action, Sprout Therapy seeks damages and injunctive relief under federal law and California law arising out of Defendants' intentional and unauthorized copying, use, and reproduction of Sprout Therapy's digital footprint.  Defendants' actions have caused harm to Sprout Therapy, including by (i) deceiving and/or confusing customers, providers, and other members of the autism care or ABA therapy industry about the relationship between Defendants and Sprout Therapy, (ii) misappropriating Sprout Therapy's valuable goodwill and brand recognition for Defendants' benefit, and (iii) diverting business from Sprout Therapy to Songbird by using Sprout Therapy's own marketing, advertising, and branding efforts.

## THE PARTIES

10.     Plaintiff Sprout Therapy is a tech-forward Delaware corporation that provides in-home ABA therapy.  Sprout Therapy's principal place of business is 2545 Butternut Drive, Hillsborough, CA 94010.

11.     Defendant Kin Health, Inc., d/b/a Songbird Therapy a/k/a Songbird Care is a Delaware corporation that, according to its website, provides in-home ABA therapy.  Songbird's principal place of business is 548 Market Street #17739, San Francisco, CA 94104.

12.     Defendant Benjamin Hsu is the founder and owner of Songbird.

**JURISDICTION**

13.    The Court has personal jurisdiction over Defendants because they transact business within the State of California and have committed tortious acts within the State of California.

14.    The Court has subject matter jurisdiction with respect to Counts I, II, and III under 28 U.S.C. § 1331 because Counts I, II, and III arise under 15 U.S.C. § 1125(a) *et seq.*

15.    The Court may exercise supplemental jurisdiction with respect to Counts IV and V under 28 U.S.C. § 1367(a) because Counts IV and V are so related to Counts I, II, and III that they form part of the same case or controversy under Article III of the United States Constitution.

**VENUE**

16.    Venue in this District is proper under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims alleged in this Complaint occurred in this District.

**INTRADISTRICT ASSIGNMENT**

17.    Pursuant to Civil Local Rule 3-2, this is a case arising in the county of San Francisco and therefore shall be assigned to the San Francisco Division or the Oakland Division.

**ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF**

**Autism Spectrum Disorder and Current Care Models**

18.    Autism spectrum disorder ("ASD" or "autism") is a chronic developmental disorder characterized by (i) challenges with social skills, communication, interpersonal relationships, and self-regulation, and (ii) repetitive speech or behaviors.  Signs of the disorder, such as delayed speech or repeated body movements, typically appear during early childhood.

19.    While there is no known cause of the disorder, research shows that there is a significant genetic component to ASD and many other factors, such as environmental exposure to, for example, air pollution during pregnancy, may contribute to its development.

20.    In addition, while there is no known cure for autism, it is well-established that early detection and treatment are key to optimizing outcomes for children with ASD.  For example, early treatment can help a child improve his or her speech and learn new social skills to practice as the child grows.  Early intervention can also stop problematic behaviors from becoming a habit.

21.     Although autism is the fastest-growing developmental disorder in the United States and affects an estimated 1.5 million children, current care models for the disorder are broken and expensive.  For example, under current care models, it takes months for families to find an available child psychologist, navigate waitlists, and coordinate with insurance providers.  The cost of autism care is also extraordinarily high—an estimated $1.4 to $2.3 million per person over a lifetime.

22.     There are also many families who are simply unable to access ASD care.  For example, Medicaid families seeking an ASD evaluation are often not accepted or deprioritized.

**Yakubchyk Launches Sprout Therapy, Pioneering the Future of Autism Care**

23.     Sprout Therapy was founded in late 2019 by entrepreneur Yury Yakubchyk.  Having himself struggled with mental health challenges as a child, Yakubchyk was all-too-familiar with the broken care model for children with behavioral disorders.  And, as an entrepreneur, he was well positioned to build a tech-enabled care platform to create effective evaluation and treatment plans for children struggling with ASD.

24.     Sprout Therapy was founded based on Yakubchyk's vision of building a data repository for autism care and leveraging this repository to improve experiences for families, clinicians, and payors.  In addition, through Sprout Therapy, Yakubchyk seeks to bridge the socioeconomic gap in autism care and remove barriers to care through Sprout Therapy's platform.

25.     Sprout Therapy currently offers free autism assessments by highly-experienced child psychologists, tailored treatment plans after evaluation, and in-home ABA therapy.

26.     Over the last year, Sprout Therapy has expended considerable resources developing a branding, marketing, and advertising strategy to effectively promote and sell Sprout Therapy's services.

27.     Sprout Therapy's website is a reflection of these efforts, and constitutes a unique look and feel achieved through the particularized combination of (i) Sprout Therapy's logo, a small image of a Sprout followed by the word "sprout," (ii) curated images of Sprout Therapy clinicians and patients, (iii) a pink, dark blue, and light blue color scheme, (iv) the faint image of a sprout behind certain text or images, (v) a horizontal list of accepted health insurance, and (vi) text displayed in side-by-side panels on one page.

COMPLAINT

28.    The distinct look and feel of Sprout Therapy's website has acquired secondary meaning because consumers and other market participants associate it with the autism evaluation and ABA therapy services provided by Sprout Therapy.

29.    The distinct look and feel of Sprout Therapy's website is not merely functional.

30.    In large part due to the development of its branding, marketing, and advertising strategy and the establishment of its website, Sprout Therapy has been incredibly successful since its founding.  Specifically, as of December 2020, Sprout Therapy had acquired over 100 clients in either the assessment or on-going care stage.  Sprout Therapy currently offers its services in Florida, Texas, Oregon, Georgia, Illinois, Ohio, Colorado, Indiana, and California, and has publicly announced plans to expand into 14 other states.

**Songbird Copies Sprout Therapy's Website**

31.    In or about August of 2020, Sprout Therapy became aware of a website and LinkedIn page advertising the services of Songbird, a purported provider of ABA therapy for children with autism founded by Defendant Benjamin Hsu.

32.    Sprout Therapy further became aware that Songbird's website, www.songbirdcare.com, displays images, layouts, texts, and an overall look and feel directly copied from Sprout Therapy's website.

33.    For example, (i) the small icon of a bird followed by the word "Songbird" on the top left-hand corner of the homepage of Songbird's website ("Songbird's Homepage") is a copy of the small icon of a sprout followed by the word "Sprout" on the homepage of Sprout Therapy's website ("Sprout Therapy's Homepage"); (ii) the statement in large letters in the middle of Songbird's Homepage, "ABA therapy at home, personalized for your child" is a copy of the large letters in the middle of Sprout Therapy's Homepage, "In-Home Autism Care. Tailored for Your Family," (iii) the placement of a "get started" and/or "get in touch" button on Songbird's Homepage directly under this text and on the top right-hand corner of Songbird's Homepage is a copy of the placement of the "get started" button on Sprout Therapy's Homepage directly under the corresponding text and on the top right-hand corner of Sprout Therapy's Homepage, (iv) the placement of a chat button on the lower right-hand corner of Songbird's Homepage is a copy of the chat button on the lower right-

hand corner of Sprout Therapy's Homepage, and (v) the faint image of a bird behind the text and images on Songbird's Homepage is a copy of the faint image of a sprout behind the text and images on Sprout Therapy's Homepage.

34.    Songbird has even copied Sprout Therapy's description of its services.  Specifically, below a horizontal list of accepted insurance providers in side-by-side panels of text, Songbird's Homepage describes its services as bringing "life-changing care for children with autism," and states that "Songbird Therapy provides ABA therapy for children in their own home, where they're most comfortable."  This is a copy of Sprout Therapy's description of its services, also below a horizontal list of accepted insurance providers and also displayed in side-by-side panels of text, which states that Sprout Therapy empowers "families to live beyond an autism diagnosis" and provides "care for your child's needs in the environment best suited to help them thrive – your home."  The "About Us" description on Songbird's website even more closely resembles Sprout Therapy's description of its services, stating that Songbird offers services "in a natural setting where your child can best thrive: your own home."

35.    Also on its website, Songbird offers a more specific breakdown of the two different services it provides, a copy of the more specific breakdown of the two different services provided by Sprout Therapy.  First, Songbird states that it offers "personalized ABA therapy," stating, "[w]e take an individualized approach to autism care, designing care plans based on each child's unique abilities and goals."  This is a copy of Sprout Therapy's identification and description of the first service it offers, "ABA therapy."  Sprout Therapy's website states, "[o]ur holistic, personalized and carefully planned approach to autism care treatment ensures your child gets the coverage he or she deserves."  The second service identified by Songbird is "autism evaluation," stating, "Songbird Therapy offers free in-home autism diagnostic evaluation in some states."  Sprout Therapy similarly identifies the second service it offers as "autism evaluation," stating that "Sprout Therapy provides free autism diagnostic evaluations for qualifying families to help you get access to therapy sooner."

36.    Perhaps worse than this copying is the fact that Songbird uses the icon of a sprout and a leaf, symbols associated with Sprout Therapy and displayed throughout its website, to describe the two services offered by Songbird.  Of course, there is no relationship between a sprout or leaf and

any legitimate branding or marketing of Songbird's services.  Songbird uses these symbols merely to further induce consumer confusion.

37.   Songbird has copied several other features of Sprout Therapy's website.  For example, when a user visiting Songbird's website clicks on the chat feature on the lower right-hand corner of the Songbird Homepage, a chat box appears that reads "We're here to help you and your family." This is an exact copy of the message that appears when a user visiting Sprout Therapy's website clicks on the chat feature on the lower right-hand corner of Sprout Therapy's Homepage, which reads "Our team is here to help you and your family."

38.   As yet another example of Defendants' copying, Songbird's website lists several open roles for which it is hiring, and the title of these roles, the layout of Songbird's posting of these roles, and the description of these roles, is a copy of the corresponding Sprout Therapy title, layout, and description.  For example, Songbird is purportedly looking for a "Client Experience Specialist." This is a copy of Sprout Therapy's search for a "Client Experience Associate."  Notably, the "Client Experience" aspect of these job titles is not standard in the industry, and was instead created by Sprout Therapy.  In addition, Songbird's webpage describing the Client Experience Specialist role ("Songbird's Post") is a copy of Sprout Therapy's webpage describing the Client Experience Associate role ("Sprout Therapy's Post").  Specifically, (i) the headings throughout Songbird's Post, such as "Who we are," "What you'll do," and "What you'll need" are an exact copy of the headings on Sprout Therapy's Post, "Who We Are at Sprout Therapy," "What You'll Do," and "What You'll Need" and (ii) the requirements listed on Songbird's Post, "2+ years of professional experience in a customer-facing role," "strong written and verbal communication skills," and "ability to use email, phone, text, video chat, WhatsApp with ease," are a copy of the requirements listed on Sprout Therapy's Post, "2+ years of professional experience in client experience," "strong written and verbal communication skills – ability to use email, phone, text, video chat, with ease."  Songbird has also copied the layout and format of Sprout Therapy's Post, including its black and white text layout with a large black heading in bold on the top of the page, small black headings throughout the page in bold, and bulleted lists under each heading.

COMPLAINT

39.   Songbird's website also identifies the areas in which Songbird offers services by displaying a shaded map of the United States and identifying "services now available" in dark blue, and "services coming soon" in light blue.   This is a copy of Sprout Therapy's mechanism for displaying the areas in which it offers services.

**Figure 1: Comparison of Songbird's and Sprout Therapy's Display of Services Available**

**Songbird's Services Available**          **Sprout Therapy's Services Available**

40.   If Songbird's copying of Sprout Therapy's website left any doubt about Songbird's intentional copying, reproduction, and use of Sprout Therapy's digital footprint, such doubts were resolved when Sprout Therapy discovered a Songbird advertisement that simply replaced the word "Sprout" with the word "Songbird" in one of Sprout Therapy's advertisements.

41.   Specifically, on or about November 19, 2020, Sprout Therapy became aware of a Facebook advertisement promoting the services of "Songbird Therapy" using the exact same advertisement which was originally launched by Sprout Therapy on or before October 12, 2020.

COMPLAINT

1

**Figure 2: Comparison of Songbird's and Sprout Therapy's Facebook Advertisement**

2

**Songbird's Facebook Advertisement**          **Sprout Therapy's Facebook Advertisement**

3

4

5

6

7

8

9

10

11

12

13

14

15





16      42.    As evidenced by the above screenshots, when it copied Sprout Therapy's

17  advertisement, Songbird replaced only the small icon of a sprout followed by the word "Sprout" with

18  a small icon of a bird followed by the word "Songbird."  It did not bother to change (i) the

19  background of the advertisement, a faint image of a sprout, (ii) the text of the advertisement, "In-

20  home ABA Therapy," (iii) the color scheme of the advertisement, a light green background with

21  brown letters, or (iv) the image of a young boy displayed in the Sprout Therapy advertisement.

22      43.    Defendants' use, copying, and reproduction of Sprout Therapy's digital footprint

23  constitutes a misrepresentation of the nature and/or characteristics of Songbird's services and/or

24  commercial activities, including because it creates the false impression that Songbird is affiliated

25  with, or sponsored by, Sprout Therapy.

26      44.    Defendants' use, copying, and reproduction of Sprout Therapy's digital footprint is

27  likely to cause consumer confusion and/or deception as to (i) the affiliation, connection, or

28

association between Defendants and Sprout Therapy, (ii) the origin, sponsorship, and/or approval of Songbird's services, and (iii) the commercial activities of Sprout Therapy.

45.   Defendants' use, copying, and reproduction of Sprout Therapy's digital footprint is likely to cause consumer confusion and/or deception including because Songbird purports to offer services in the exact same industry that Sprout Therapy offers services, *i.e.*, at-home ABA therapy.

46.   In addition, Defendants' use, copying, and reproduction of Sprout Therapy's digital footprint is likely to cause consumer confusion and/or deception because, in selecting materials for Songbird's website, Defendants intended to pass Songbird off as Sprout Therapy or as affiliated with Sprout Therapy, as evidenced by, for example, Songbird's change in name from "Songbird Care" to "Songbird Therapy" and its use of sprout and leaf symbols on its website.

47.   Sprout Therapy has been injured as a result of Defendants' use, copying, and reproduction of Sprout Therapy's digital footprint, including by direct diversion of sales from itself to Songbird and by a lessening of the goodwill associated with Sprout Therapy.

**Songbird Attempts to Access Sprout Therapy's Confidential and Other Information**

48.   On or about October 28, 2020, Sprout Therapy received a notification from Google indicating that two unauthorized users attempted to gain access to Sprout Therapy's trade secrets and other business confidential and/or proprietary information stored on Google Drive.

49.   The Google Drive notification indicated that, through two separate email addresses—credentilaing@songbirdcare.com and amersonmichelle01@gmail.com—an unauthorized individual or individuals attempted to access Sprout Therapy's information.

50.   Although the first email address through which access was attempted is clearly associated with Songbird, Sprout Therapy was unsure as to the origin of the second email address, amersonmichelle01@gmail.com.   A Sprout Therapy employee therefore contacted Songbird via telephone and asked, in substance and in part, whether "a woman named Michelle handles credentialing for Songbird."   The individual who answered the telephone answered in the affirmative.

**Sprout Therapy Sends Songbird a Cease and Desist Demand and Songbird Continues to Copy Sprout's Digital Footprint**

51.    On or about November 19, 2020, Sprout Therapy transmitted a cease and desist letter to Mr. Hsu and Songbird (the "Letter").   The Letter demanded that Mr. Hsu and Songbird (i) immediately stop using, reproducing, and copying Sprout Therapy's digital footprint, including its website and digital advertisements, and (ii) cease and desist from any attempt to gain access to Sprout Therapy's proprietary and other confidential information.

52.    Defendants responded to the Letter by refusing to accept responsibility for its copying, use, and reproduction of Sprout Therapy's digital footprint and explaining away the attempted access to Sprout Therapy's Google Drive.

53.    With respect to Defendants' copying of Sprout Therapy's website, Defendants responded that "a visual review shows minor similarities and significant differences" between Songbird's and Sprout Therapy's sites, and proceeded to list these purported differences. Defendants offered the fact that the "Songbird Therapy website is principally black and white, while the Sprout site contains mostly pastel colors" as one difference, but Songbird's website is <u>not</u> principally black and white, and instead copies the pink, light blue, and dark blue color scheme of Sprout Therapy's website.

54.    Defendants ultimately agreed not to make further use of the Facebook advertisement that it copied from Sprout Therapy and to "modify its site to eliminate the similarities that concern Sprout."   However, Defendants have made only minor modifications to its website, and these modifications do not even come close to ameliorating the damage that Sprout Therapy has suffered and will continue to suffer as a result of Songbird's copying.

55.    Specifically, each of the examples of copying described above in paragraphs 33 through 39 exist on Songbird's website as of the date of the filing of this Complaint, *i.e.*, after Songbird purportedly made changes to ameliorate Sprout Therapy's concerns.

56.    In addition, the changes made by Songbird evidence an intent to bury its use of Sprout Therapy's content on different pages on its website rather than eliminate it.   For example, before Songbird made changes to its website, Songbird's Homepage included a statement below and on the

left side of a horizontal list of accepted insurance, "Songbird Therapy is a modern provider of in-home Applied Behavior Analysis (ABA) Therapy. We <u>provide personalized and life-changing care for children in the environment where they can best grow - your own home.</u>"  This is an exact copy of the statement on Sprout's Homepage below and on the left side of the horizontal list of accepted insurance, stating "Sprout Therapy is a tech-forward provider of in-home and online Applied Behavior Analysis (ABA) Therapy. Our mission is to <u>provide personalized, technology-powered care for your child's needs in the environment best suited to help them thrive - your home.</u>"

57.   After Songbird made changes to purportedly ameliorate Sprout Therapy's concerns, Songbird now describes itself as providing "ABA therapy for children in their own home, where they're most comfortable."  However, Songbird has moved the language that represents a direct copy of the language on Sprout Therapy's Homepage to its "About Us" page, which now reads that Songbird provides "personalized care" in "the natural setting where your child can best thrive: your own home."

58.   Songbird has made other minor changes to its website.  It has changed the statement in large letters in the middle of its Homepage from "In-Home Autism Care, Personalized For Your Child," to "ABA therapy at home, personalized for your child."  Both are a copy of the large letters in the middle of the Sprout Therapy Homepage, "In-Home Autism Care. Tailored for Your Family."

59.   Notwithstanding any changes that Songbird has made to its website, such changes do not reduce consumer confusion or Defendants' diversion of business from Sprout Therapy to Songbird by using Sprout Therapy's own marketing, advertising, and branding efforts.

60.   Sprout Therapy is therefore forced to bring this action to protect its valuable goodwill and brand recognition and recover from Songbird's use of Sprout Therapy's own digital footprint to divert business from Sprout Therapy to Songbird.

## <u>COUNT I</u>

(Unfair Competition and False Designation of Origin under 15 U.S.C. § 1125(a) *et seq.*)

61.   Sprout Therapy repeats and realleges the allegations contained in paragraphs 1 through 60 as if fully set forth herein.

COMPLAINT

62.   In connection with the provision of services, Defendants have used in commerce a false designation of origin, false or misleading description of fact, and/or false or misleading representation of fact.

63.   Defendants' actions are likely to (a) cause confusion, (b) cause mistake, (c) deceive as to the affiliation, connection, or association of Defendants with Sprout Therapy and/or to the origin, sponsorship, and/or approval of services to be offered by Defendants.

64.   Defendants actions have caused, and threaten to case, damage to Sprout Therapy.

65.   Defendants actions have caused, and threaten to cause, irreparable harm to Sprout Therapy.

## COUNT II

### (False Advertising under 15 U.S.C. § 1125(a) *et seq.*)

66.   Sprout Therapy repeats and realleges the allegations contained in paragraphs 1 through 60 as if fully set forth herein.

67.   In connection with the provision of services, Defendants have used in commerce a false designation of origin, false or misleading description of fact, and/or false or misleading representation of fact.

68.   In the course of commercial advertising and/or promotion, Defendants have misrepresented the nature, characteristics, and/or qualities of Songbird's services and/or commercial activities.

69.   Defendants actions have caused, and threaten to case, damage to Sprout Therapy.

70.   Defendants actions have caused, and threaten to cause, irreparable harm to Sprout Therapy.

## COUNT III

### (Infringement of Trade Dress under 15 U.S.C. § 1125(a) *et seq.*)

71.   Sprout Therapy repeats and realleges the allegations contained in paragraphs 1 through 60 as if fully set forth herein.

72.   The following trade dress, comprising the distinctive look and feel of Sprout Therapy's website, is nonfunctional, and has developed secondary meaning:

(a) Sprout Therapy's logo, a small image of a Sprout followed by the word "sprout";

(b) curated images of Sprout Therapy clinicians and patients;

(c) a pink, dark blue, and light blue color scheme;

(d) the faint image of a sprout behind certain text or images;

(e) a horizontal list of accepted health insurance; and

(f) text displayed in side-by-side panels on one page.

73.   Defendants' actions infringe Sprout Therapy's trade dress because they are likely to cause confusion as to the affiliation, connection, or association of Defendants with Sprout Therapy and/or to the origin, sponsorship, and/or approval of services to be offered by Defendants.

74.   Defendants actions have caused, and threaten to case, damage to Sprout Therapy.

75.   Defendants actions have caused, and threaten to cause, irreparable harm to Sprout Therapy.

## **COUNT IV**

(Unfair Competition under Cal. Bus. & Prof. Code § 17200 *et seq.*)

76.   Sprout Therapy repeats and realleges the allegations contained in paragraphs 1 through 60 as if fully set forth herein.

77.   Defendants have engaged in unlawful, unfair, and/or fraudulent business acts and practices including, but not limited to, copying and misappropriating Sprout Therapy's digital footprint.

78.   Defendants' actions are likely to cause confusion as to the affiliation, connection, or association of Defendants with Sprout Therapy and/or to the origin, sponsorship, and/or approval of services to be offered by Defendants.

79.   As a result of Defendants' actions, Sprout Therapy has suffered an injury in fact, including by direct diversion of sales from itself to Songbird and by a lessening of the goodwill associated with Sprout Therapy.

COMPLAINT

## COUNT V

(False Advertising under Cal. Bus. & Prof. Code § 17500 *et seq.*)

80.     Sprout Therapy repeats and realleges the allegations contained in paragraphs 1 through 60 as if fully set forth herein.

81.     Defendants' copying of Sprout Therapy's digital footprint constitutes false advertising including because Songbird's website and Facebook advertisement are actually misleading and/or have a capacity, likelihood, or tendency to deceive or confuse the public.

82.     As a result of Defendants' actions, Sprout Therapy has suffered an injury in fact, including by direct diversion of sales from itself to Songbird and by a lessening of the goodwill associated with Sprout Therapy.

## DEMAND FOR JURY TRIAL

83.     Sprout Therapy hereby demands a jury trial on all its claims.

## PRAYER FOR RELIEF

84.     Sprout Therapy respectfully requests judgment against Defendants as follows:

(a)    Finding a substantial likelihood that Defendants will continue to use, copy, and/or reproduce Sprout Therapy's digital footprint unless enjoined from doing so;

(b)    Finding that Sprout Therapy will suffer irreparable harm if Defendants are not enjoined from copying, using, and/or reproducing Sprout Therapy's digital footprint;

(c)    Preliminarily and permanently enjoining Defendants and their officers, agent, services, employees, attorneys, successors and assigns, and all persons, firms, corporations, and associates acting on its behalf from copying, using, and/or reproducing Sprout Therapy's digital footprint;

(d)    Ordering Defendants to account for all gains, profits, and advantages derived from its acts of copying, use, and reproduction of Sprout Therapy's digital material, and ordering that all gains, profits, and advantages are deemed to be held in constructive trust for the benefit of Sprout Therapy;

(e)    Awarding Sprout Therapy damages in an amount to be determined at trial;

(f)    Awarding Sprout Therapy exemplary damages, as allowed by law;

(g)    Awarding Sprout Therapy costs incurred in bringing this claim, including attorney's fees and costs, as permitted by law;

(h)   Awarding Sprout Therapy pre-judgment and post-judgment interest; and

(i)   Granting such other, further, and different relief as the Court deems just and proper.

**DATED:  December 11, 2020**

By   /s/ *Kirk D. Dillman*

Kirk D. Dillman (SBN 110486)
MCKOOL SMITH HENNIGAN, P.C.
300 South Grand Avenue, Suite 2900
Los Angeles, California 90071
Telephone: (213) 694-1200
Facsimile: (213) 694-1234
*kdillman@mckoolsmithhennigan.com*

Brett C. Cooper*
Eliza Beeney*
MCKOOL SMITH, P.C.
One Manhattan West
395 Ninth Avenue, 50th Floor
New York, New York  10001
Telephone: (212) 402-9400
Facsimile: (212) 402-9444
*bcooper@mckoolsmith.com*
*ebeeney@mckoolsmith.com*

*Pro hac vice application forthcoming*

*Attorneys for Plaintiff Sprout Therapy*

COMPLAINT